IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TAMARA JONES, | No. 2:13-cv-01622-HZ |
|         Plaintiff, | OPINION & ORDER |
|    v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
|         Defendant. | |

Bruce W. Brewer
PO Box 421
West Linn, OR 97068

      Attorney for Plaintiff

S. Amanda Marshall
United States Attorney, District of Oregon
Ronald K. Silver
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION & ORDER

Jordan D. Goddard
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendants.

HERNÁNDEZ, District Judge:

      Plaintiff Tamara Jones brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income (SSI). This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). I reverse the Commissioner's decision and remand for additional proceedings on the issue of Plaintiff's credibility and the weight given to the opinion of Plaintiff's treating physician.

## PROCEDURAL BACKGROUND

      Plaintiff applied for SSI on September 13, 2010, alleging an onset date of March 2, 2007. Tr. 92-97. Her application was denied initially and on reconsideration. Tr. 54-62, 73-76, 63-72, 81-82.

      On May 10, 2012, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 27-53. During the hearing, she amended her alleged onset date to August 13, 2010. Tr. 30. On June 11, 2012, the ALJ found Plaintiff not disabled. Tr. 9-26. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on cervical spine disease and lumbar spine disease. Tr. 145. In addition, Plaintiff alleges pain in her legs and back, an inability to turn her head without a lot of pain, numbness in the fingers of her left hand, loss of strength and control of her left hand, and headaches. Tr. 135. She was forty-five years old at the time of the administrative hearing. Tr.

2 - OPINION & ORDER

30. She attended high school through the twelfth grade and has past work experience as a temporary worker, package shipper, cashier, and farmworker. Tr. 31, 146. Because the parties are familiar with the medical and other evidence in the record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert,* 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 13, 2010 application date. Tr. 14. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of obesity, cervical and lumbar spondylosis, status-post left and right subacromial decompression and debridement, osteoarthritic changes in knees, fibromyalgia, depression, anxiety, and post-traumatic stress disorder, but that the impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 14-15. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except she is limited to lifting and carrying ten pounds occasionally and less than ten pounds frequently, standing or walking for two hours in an eight-hour workday and sitting for up to six hours in an eight-hour work day. Tr. 16-17. She is also limited to simple, one to three-step tasks with no coworkers in close proximity, and limited contact with the public. Tr. 17. With this residual functional capacity, the ALJ determined that Plaintiff is unable to perform any of her past relevant work. Tr. 21. However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant

4 - OPINION & ORDER

numbers in the economy such as surveillance systems monitor, escort-vehicle driver, and addresser. Tr. 22. Thus the ALJ determined that plaintiff is not disabled. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.; see also Batson*, 359 F.3d at 1193. However, this court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by finding her not credible and by improperly rejecting the opinion of her treating physician. Defendant contends that the ALJ did not err, but even if she did err in rejecting the opinion of Plaintiff's treating physician, it was harmless.

5 - OPINION & ORDER

I.  **Credibility Determination**

The ALJ found Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of her alleged symptoms to be not credible "to the extent they are inconsistent with the . . . residual functional capacity assessment."[1] Tr. 17. In assessing credibility, the ALJ considered the Plaintiff's activities of daily living, inconsistencies between Plaintiff's statements and medical evidence in the record, and Plaintiff's failure to seek treatment and use of only conservative treatment. Tr. 17-20. I do not affirm the ALJ's findings regarding the Plaintiff's activities of daily living because the ALJ did not properly consider all of the evidence in the record. Nor do I affirm the findings regarding alleged inconsistencies between Plaintiff's statements and the medical evidence, because I find that the medical evidence does not contradict Plaintiff's allegations. However, I do affirm the ALJ's finding that Plaintiff's credibility is diminished due to her failure to seek treatment and use of only conservative treatment.

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 404.1529(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (*citing Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir.

---

[1] Although some District of Oregon cases reject the use of this boilerplate phrase because the language is not sufficiently specific and does not provide a clear and convincing reason for an adverse credibility finding, where the ALJ gives other reasons for her credibility finding, the decision should not be reversed solely for the use of the boilerplate language. *Theabolt v. Colvin,* 3:12-CV-01627-SU, 2014 WL 50855, at *11 (D.Or. Jan. 6, 2014). Rather, "the ALJ's credibility finding must instead be evaluated on the strength of the several reasons [s]he offered." *Id.*

1995) (*citing Bunnell v. Sullivan,* 947 F.2d 341, 345–46 (9th Cir. 1991)(*en banc* )). "The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins,* 466 F.3d at 883; *see also Bunnell,* 947 F.2d at 346–47.

### A. Activities of Daily Living

The ALJ found that Plaintiff's activities of daily living undermined her credibility because they were not consistent with Plaintiff's complaints of disabling symptoms and limitations. Tr. 19. Plaintiff argues that the ALJ "ignored the evidence" and failed to address the workplace transferability of the daily living activities.

I find that the ALJ erred in characterizing statements and documents to reach the conclusion that Plaintiff's activities of daily living were inconsistent with her testimony of disabling symptoms and limitations. For example, while the ALJ cited to Plaintiff's Function Report for the proposition that that Plaintiff "takes care of other animals by feeding and bathing them," Plaintiff's actual statement in the Report was that she feeds her dog and goes out to water and feed the cows "if I'm not hurting too bad," but that her brother "usually takes care of the farm[] animals because I can't anymore." Tr. 19, 136. The ALJ also stated that Plaintiff "walks to her mother's home and visits with her during the day." Tr. 19. However, in the Function

Report that the ALJ cited, Plaintiff said she will "go over and visit" her mother and Plaintiff does not indicate whether she walks or drives. Tr. 136. Plaintiff testified that she can only walk about an eighth of a mile, the length of her driveway. Tr. 37-38. The ALJ stated that Plaintiff "cooks complete meals." Tr. 19. However, the ALJ failed to include Plaintiff's statement in the same Function Report that, while she is cooking, she has to take breaks and sit down for 5-10 minutes at a time. Tr. 138. The ALJ noted that Plaintiff rides a tractor to feed the farm animals. Tr. 19. However, Plaintiff's full statement was that "if I'm not hurting too bad I'll get on the tractor to feed [the animals], usually I have to get someone else [to] feed. It's gotten so hard to get off and on the tractor anymore." Tr. 137. The ALJ stated that "notably, the record from 2011 states the claimant 'runs' her parents' farm. Tr. 19. However, the ALJ did not explain how this statement in the Function Report bears on any inconsistency with Plaintiff's claimed limitations.

      Some of the ALJ's findings regarding Plaintiff's daily activities were supported by the record. For example, Plaintiff claims to have difficulty with memory and concentration but the ALJ found that the field office noted no difficulty with Plaintiff's reading, understanding, coherency, and concentration during her initial claim, and she is able to manage her medications, watch television[2], and fill out forms. Tr. 17-20.

      However, much of the ALJ's evidentiary basis for assessing Plaintiff's daily activities does not fully account for the context or full content of the testimony and reports in the record. The ALJ's finding regarding Plaintiff's daily activities is not supported by substantial evidence and, therefore, is not affirmed.

---

[2] While I disagree with the ALJ that Plaintiff's ability to watch television demonstrates "significant concentration and persistence," it is not determinative of Plaintiff's overall ability to remember and concentrate. *See* Tr. 20.

8 - OPINION & ORDER

**B. Inconsistencies Between Plaintiff's Statements and the Medical Evidence**

The ALJ found that Plaintiff's credibility is undermined because some of her testimony was not supported by medical evidence in the record. Plaintiff argues that the ALJ overlooked aspects of medical evidence in the record and erred in rejecting the extent of Plaintiff's symptoms.

The ALJ found that some of Plaintiff's subjective complaints did not correspond to medical evidence in the record. For example, Plaintiff alleged she uses a cane when walking outside of her house, yet there is no evidence she has been prescribed a cane by a doctor and she has a normal gait. In addition, the ALJ found that while Plaintiff alleged numbness in her fingers, EMG studies are normal and she has no significant atrophy. Tr. 18.

However, the record does not a support a finding that Plaintiff's statements were inconsistent with the medical evidence. The cane was recommended by a nurse practitioner that Plaintiff sees regularly. Tr. 466. The record supports Plaintiff's allegation of numbness in her fingers. Tr. 428. In addition, the ALJ did not offer a clear and convincing reason for rejecting Plaintiff's testimony that she has to lie down two or three times a day. Tr. 38.

Plaintiff's statements and the medical evidence are not inconsistent. Therefore, this finding is not affirmed.

**C. Failure to Seek Treatment and Use of Only Conservative Treatment**

The ALJ found that Plaintiff's credibility is undermined because she has failed to seek treatment for obesity, has received little treatment for her back pain other than pain medication, and needs only conservative treatment for her pain and fibromyalgia. In addition, the ALJ found that Plaintiff "has not generally received the type of psychiatric treatment one would expect for a totally disabled individual." Tr. 19. Plaintiff argues that nothing in the record indicates that she

was prescribed any course of treatment for her obesity or that any treatment besides pain medication was prescribed for her back pain and fibromyalgia.

An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment can be a basis to discount a claimant's symptom testimony. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). An ALJ may cite a claimant's failure to seek treatment in finding a claimant not credible. *Smolen,* 80 F.3d at 1284. In addition, a conservative course of treatment can undermine allegations of debilitating pain; however, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment or the record does not reflect that more aggressive treatment options are appropriate or available. *Lapeirre-Gutt v. Astrue,* 382 Fed. Appx. 662, 662 (9th Cir. 2010); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The record reflects the ALJ's finding regarding Plaintiff's failure to seek treatment and use of only conservative treatment. I affirm this finding.

### D. Credibility Conclusion

In summary, I affirm the ALJ's finding regarding Plaintiff's failure to seek treatment and use of conservative treatment. The findings based on Plaintiff's daily activities and inconsistencies between Plaintiff's statements and medical evidence are not affirmed. Although this court may affirm an ALJ's overall credibility conclusion when not all of the ALJ's reasons are upheld, *Batson,* 359 F.3d at 1197, I am unable to determine whether the ALJ would still have found Plaintiff not credible based only on the one reason that I affirm.

On remand, the ALJ must determine whether Plaintiff is credible. Depending on the finding, it may be necessary to reformulate Plaintiff's residual functional capacity and the disability analysis.

## II.   Treating Physician Opinion

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Viviane Ugalde, M.D. The ALJ gave Dr. Ugalde's opinion "some weight." Tr. 20. Because I find that the ALJ's assessment of Dr. Ugalde's opinion was influenced by the ALJ's credibility determination of Plaintiff, I remand the issue for further proceedings after the Plaintiff's credibility is determined.

When making a determination regarding disability, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995). If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007); *Holohan,* 246 F.3d at 1202. If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2). *Orn,* 495 F.3d at 631.

If the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Orn,* 495 F. 3d at 632.

Dr. Ugalde has treated Plaintiff for neck and back pain since March 19, 2009. Tr. 469. In a June 1, 2012 statement, Dr. Ugalde stated that Plaintiff had chronic neck and back pain with bilateral leg pain, chronic shoulder pain, history of carpal tunnel syndrome and right CTS release, depression, anxiety, cervical and lumbar spondylosis, and fibromyalgia. Tr. 469-73. Dr. Ugalde described the plaintiff's primary symptoms as "total body muscle pain and neck and back pain." Tr. 470. Dr. Ugalde opined that Plaintiff can occasionally (for 1/3 of the workday) lift or carry up to 25 pounds and can frequently (2/3 of the workday) lift or carry up to 10 pounds. *Id*. In an 8-hour day, Plaintiff can stand or walk for 4 hours and sit for 4 hours (although not for more than 2 hours at a time). *Id*. Dr. Ugalde stated that Plaintiff can only push or pull with her upper extremities, and listed Plaintiff's limitations in the use of her upper extremities as due to "prior shoulder decompression and cervical radicular symptoms and hand numbness and tingling." Tr. 471. Dr. Ugalde stated that Plaintiff's medication can be sedating and could therefore interfere with her ability to sustain the basic attention and concentration needed to perform simple work tasks. Tr. 471. Dr. Ugalde estimated that Plaintiff's attention and concentration would be impaired to such a degree that she could not be expected to perform even simple work tasks 10% of the time. Tr. 472. In addition, Dr. Ugalde stated she would expect Plaintiff to miss two full workdays or more a month from even a simple and routine sedentary job because of "frequent flares" in her impairments, symptoms, medications, and their side effects. Tr. 472.

The ALJ noted that Ugalde's assessment of Plaintiff's functional ability was "mostly consistent" with Plaintiff's testimony. Tr. 20. However, the ALJ found that Dr. Ugalde provided no justification for limiting the claimant to four hours of sitting each day. Tr. 20. In addition, the ALJ found no support for Dr. Ugalde's opinion that Plaintiff "can never stoop, kneel, crouch,

crawl, or reach overhead." Tr. 20. The ALJ further found that Dr. Ugalde was "not qualified to reliably determine [Plaintiff's] day-to-day functioning" because her office is several hours from Plaintiff's home and therefore, Dr. Ugalde does not see Plaintiff frequently. Tr. 20. In addition, the ALJ noted that "treating physicians can be sympathetic to their patients and tend to rely on the subjective complaints of the patients." Tr. 20.

I agree that Dr. Ugalde does not support her opinion that claimant can only sit up to four hours each day. However, Dr. Ugalde does explain her reasoning behind limiting the use of Plaintiff's upper extremities. Tr. 471. While the distance between Plaintiff's home and Dr. Ugalde's office is not determinative of the weight that should be given to Dr. Ugalde's opinion, it is relevant to the extent that it reflects on the frequency of times Dr. Ugalde has examined Plaintiff.

I infer from the ALJ's statement regarding the sympathy treating physicians feel towards their patients that the ALJ diminished the amount of weight she gave to Dr. Ugalde's statement partly because she did not find the Plaintiff credible and some of Dr. Ugalde's opinions were based on the Plaintiff's subjective complaints. Therefore, on remand, Dr. Ugalde's statement should be considered after a new assessment of Plaintiff's credibility.

///

///

///

13 - OPINION & ORDER

## CONCLUSION

Based on the foregoing, the Commissioner's decision is reversed and remanded for additional proceedings on the credibility of the Plaintiff and the opinion of treating physician Dr. Ugalde.

IT IS SO ORDERED.

Dated this 31 day of Oct, 2014

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge

14 - OPINION & ORDER